## A02A2035. FRANKLIN v. THE STATE.
(574 SE2d 361)

JOHNSON, Presiding Judge.

After a bench trial, Marcus Franklin was convicted of prowling.[1] On appeal, he challenges the sufficiency of the evidence to support the conviction. Because the evidence was sufficient, we affirm his conviction.

Viewed in a light most favorable to the verdict,[2] the evidence shows that at about 1:43 a.m., Franklin was riding as a passenger in a car driven by Clinton Keyton. A sheriff's deputy watched as the car traveled south on Georgia Highway 85 and turned onto Kenwood Road at a slow speed. The deputy followed the car and saw it make a u-turn on Kenwood Road. The only business open in the area was an Amoco convenience store, which was located about 100 yards from where the men were driving. The car turned into Kenwood Business Plaza and went toward the rear of the closed businesses. At that point, the deputy stopped the car, which had an expired tag.

Upon approaching Franklin and Keyton, the deputy noticed a wig next to Keyton's right knee. When the deputy asked the men why they were in the business park after hours, they replied that they had met a woman named "April" on the Internet and were driving to her house to meet her, but that they were lost. They said that she had given them directions to her house, which directions they had memorized rather than written down. Franklin and Keyton did not give the deputy the woman's last name, address, phone number, or e-mail address. Although it was a warm night, Keyton wore a dark long-sleeved jacket and dark long pants over a t-shirt and long blue jeans.

Police impounded the car based on the tag violation. During an inventory search, officers found a dark ski mask and a box cutter on Franklin's side of the car.

The deputy testified that, at the time of the stop, he was concerned that Franklin and Keyton were preparing to rob the convenience store, which had previously been robbed by a knife-wielding perpetrator. He was also concerned based on information he received from law enforcement during a criminal background check of the two men.[3] The deputy and his colleague tried to locate the residence the men claimed to be looking for, but they did not find it.

---

[1] OCGA § 16-11-36 (a).

[2] *Griffin v. State*, 223 Ga. App. 796 (1) (479 SE2d 21) (1996).

[3] The trial court would not allow the deputy to testify as to what the criminal background checks revealed. During sentencing, however, testimony showed that Keyton had been convicted of armed robbery and Franklin was out on bond on a pending armed robbery charge.

A person commits the offense of prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.[4]

Unless flight by the person or other circumstances make it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct.[5] No person shall be convicted of an offense under this Code section if the law enforcement officer failed to comply with the foregoing procedure or if it appears at trial that the explanation given by the person was true and would have dispelled the alarm or immediate concern.[6]

Franklin contends that the explanation he and Keyton gave was reasonable and should have dispelled any concern the officer had about why the men were where they were at the time of the stop. He explains that Keyton was issued the ski mask at work (which job he left about five months earlier), that they were on a public road and had not violated any traffic laws other than driving with an expired tag, that a box cutter is not evidence of any crime, that they possessed the wig because Halloween was only ten days away, that the men were not very close to the convenience store at the time of the stop, and that a robbery could not have been accomplished with a box cutter.

Here, the officer gave Franklin an opportunity to explain his presence and conduct. In fact, the deputy testified that he and another deputy attempted to locate the woman's residence the men claimed to be trying to find. Thus, the deputy complied with the statute's requirement that he allow Franklin an opportunity to explain his presence and conduct. In light of other evidence, though, the explanation justifiably did not dispel the deputy's concerns.

The judge, acting as factfinder in this bench trial, was also authorized to reject Franklin's explanation.[7] Any rational trier of fact could have found beyond a reasonable doubt that Franklin and his companion were in a place at a time and in a manner not usual for law-abiding individuals, that the circumstances warranted a justifi-

---

[4] OCGA § 16-11-36 (a). Note: The legislature made prowling a criminal offense when it enacted OCGA § 16-11-36. The statute withstood a constitutional challenge in *Bell v. State*, 252 Ga. 267, 268 (1) (313 SE2d 678) (1984). The *Bell* opinion contains an excellent discussion of the statute and why prosecution pursuant the statute passes constitutional muster.

[5] OCGA § 16-11-36 (b).

[6] Id.

[7] See *McFarren v. State*, 210 Ga. App. 889, 890 (1) (437 SE2d 869) (1993).

able and reasonable alarm or immediate concern for the safety of property and persons in the area, and that Franklin's explanation simply did not dispel the deputy's alarm or concern. The evidence was sufficient to support the conviction.[8]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED NOVEMBER 6, 2002.

*Lloyd W. Walker*, for appellant.
*Steven L. Harris, Solicitor-General*, for appellee.

