A09A1069, A09A1159. WALDROP v. THE STATE (two cases).
(684 SE2d 417)

ADAMS, Judge.

Following a jury trial, Weldon and Joshua Waldrop, father and son, were convicted of burglary for entering property in Cherokee County with intent to take electrical wiring and copper piping. Weldon was sentenced to twenty years to serve four years; he was also fined and ordered to pay restitution. Joshua was sentenced to ten years probation to serve the first 90 to 120 days in the probation detention center; he was fined and ordered to pay restitution. Joshua was also convicted of misdemeanor obstruction and sentenced to 12 months probation, to run concurrently with the burglary charge. Following the denial of their motions for new trial, both men appeal, and their cases have been consolidated.

Construed in favor of the verdict, the evidence shows that on the afternoon of September 20, 2006, Deputy Sheriff Daniel Higgins was checking on a house that had been burglarized previously when he

---

saw a van in the driveway. The van was visible from the street. He saw construction tools in the van and also saw someone moving in the kitchen and insulation falling from the ceiling. Higgins called for backup and then entered the house and announced, "Sheriff's office." In response, he heard someone say "shit." Higgins called for the person to come to the garage and Weldon appeared. When asked about his presence, Weldon said that he was "looking around." Higgins saw copper wiring on the floor of the garage, and he saw numerous holes in the drywall inside the house. In the kitchen, he found Joshua with insulation dust on his hat, and he saw a large portion of the kitchen ceiling on the floor. Higgins placed both men under arrest.

In the van, officers found two white buckets, at least one of which contained copper wire. In the van, they also found hammers with wallboard dust on them, copper piping, and receipts for the sale of iron and brass radiators, copper, and aluminum. But the copper piping was determined not to have come from the house. A representative of the company shown on the receipts, Blaze Recycling Company, authenticated the documents. A review of Blaze's records showed that "Waldrop Weldon Leonard" had sold materials to the company 12 times in September 2006, including iron and brass radiators, copper, and aluminum. Weldon's name is listed on his bail bond as "Waldrop, Weldon Leonard," and he signed the document.

The house was abandoned at the time of the incident. It was missing a front door, the utilities had been turned off, and there had been no forced entry. But Matthew Bennett, the prior landowner,[1] testified that he had been at the house the day before and that, although the front door had been missing, the ceilings and wallboard had been in "great condition." He testified that since 5:00 p.m. the previous day, someone had torn down the ceilings, ripped the wire out of the walls, and torn up the wallboard. He testified that the wire in the buckets and the wiring in the home appeared to be the same type. He had never given the Waldrops permission to enter the house.

Officers testified that after being read his *Miranda* rights, Weldon said that he had gone to the house to look for scrap metal because he believed the house was going to be demolished. But officers also testified that Weldon claimed that he and his son were

---

[1] Although Bennett admitted he and his wife had sold the property on March 1, 2005 to "Premium Investment Properties," he testified that he had an agreement that he still owned the house and that he could move it to another location. The buyer intended to obtain commercial zoning. He had not lived in the house, however, since the sale. He lived in a subdivision nearby. Bennett is not an owner, officer or agent of Premium Investment Properties.

not there to steal anything and that the copper wiring in his van "came from his barn."

After Joshua was taken to the police car, he began screaming and kicking the interior of the car. He yelled that he "wasn't going to jail. His father wasn't going to jail. [The officers] were taking him for no reason." He also tried to slip his handcuffs under his legs to the front of his body but was prevented by officers and forcibly subdued. An officer testified that while Joshua was being transported to jail, he said that "when he got out of jail, we might catch him at this again . . . he had a wife and baby to support."

1. The evidence was sufficient to sustain the convictions for burglary. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The men were charged with burglary in that they "did unlawfully . . . and without authority and with the intent to commit a theft therein, enter and remain within the dwelling house of another, to wit: MATTHEW BENNETT. . . ." This language tracks the language of the burglary statute:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.

OCGA § 16-7-1 (a).

Joshua contends the evidence was insufficient because the State failed to prove that he entered Matthew Bennett's "dwelling house." This enumeration is controlled by *Sanders v. State*, 293 Ga. App. 534 (667 SE2d 396) (2008). That case explains that even if the defendant is charged with burglarizing someone's "dwelling house," Georgia's burglary statute "does not limit its application to buildings of any particular type or in any particular condition." Id. at 537 (2) (b) ("house under construction which is so far completed as to be capable of providing shelter to people, animals, or property constitutes a building under (the burglary) statute") (punctuation and emphasis omitted). See also *In the Interest of J. B. M.*, 294 Ga. App. 545, 547 (1) (669 SE2d 523) (2008) (burglary where defendant entered barn without authority and with intent to steal).

Also, Bennett testified that he had rights to the house and that he never gave permission to the Waldrops to enter. Joshua's argument that the deed of sale did not show Bennett retaining any rights in the house does not preclude a separate agreement to that effect. And Bennett testified to such an arrangement.

2. Weldon contends the difference between a "dwelling house" and a "building" creates a fatal variance between the allegations in the indictment and the proof at trial. But Weldon failed to raise the issue in the trial court and therefore it is waived for purposes of appeal. *Scott v. State*, 254 Ga. App. 728, 729 (1) (a) (563 SE2d 554) (2002). Compare *Sanders*, 294 Ga. App. at 537-538 (2) (c) (addressing the issue without indicating whether it was raised below).

3. Both Waldrops contend the trial court erred by failing to charge the jury on the lesser included offense of criminal trespass. Both defendants filed a written request for the charge, although with different wording. One of the requests was taken straight from the wording of the statute. The State told the court that it had no objection to the charge. And both defendants objected to the court's refusal to give the charge.

" 'A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense.' [Cit.]" *Edwards v. State*, 264 Ga. 131, 132 (442 SE2d 444) (1994). But "where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense." (Emphasis omitted.) Id. at 133.

A person commits criminal trespass when he or she knowingly and without authority enters upon the land or premises of another for an unlawful purpose. OCGA § 16-7-21 (b) (1). A person commits burglary by entering or remaining within the premises of another without authority and with the intent to commit a felony or theft therein. OCGA § 16-7-1 (a). The trial court focused on the fact that the defendants denied being on the premises with the intent to steal. Therefore, the court reasoned, even under the defendants' version of events, they could not be guilty of criminal trespass.

This court has held that "the trial court must give a requested charge on criminal trespass as a lesser included offense of burglary where the testimony of the accused if believed, would negate an element of the crime of burglary (entry with intent to commit a felony or theft). [Cit.]" (Punctuation omitted.) *Hiley v. State*, 245 Ga. App. 900 (539 SE2d 530) (2000). For instance:

> where the accused admits the unauthorized entry but denies the intent to commit a felony or theft, the trial court must give a requested charge on the lesser included offense of criminal trespass.

Id.

Here, the State presented evidence that Weldon and Joshua were on the property without permission and that Weldon stated that they

were there not to steal anything but rather to "look around" and that they thought the house was about to be bulldozed. The officers also did not find any tools in the building or in the immediate possession of either defendant. Nor was either defendant found in immediate possession of any purported stolen items. Also, Bennett was somewhat equivocal regarding whether any of the copper wiring in the van matched that from the house. Finally, the Waldrops' sole defense at trial was that they did not have intent to steal anything from the house.

As in *Hiley*, "the jury could have found [the Waldrops] entered the house with the intent to loiter there. . . ." *Hiley*, 245 Ga. App. at 901. See also OCGA § 16-11-36 (loitering or prowling). Accordingly, the trial court erred by refusing to give the charge on criminal trespass. Compare *Johnson v. State*, 164 Ga. App. 429, 429-430 (1) (296 SE2d 775) (1982) (charge not required where the theft is established but defendants deny having been on the premises); *Moore v. State*, 280 Ga. App. 894, 898 (6) (c) (635 SE2d 253) (2006) (charge not required where defendant testified to being present for a lawful purpose and state's evidence showed intent to commit theft); *Adams v. State*, 284 Ga. App. 534, 541 (4) (644 SE2d 426) (2007) (charge not required where defendant denied having entered the burglarized premises); *Sanders*, 293 Ga. App. at 536 (2) (a) (charge not required where defendant claimed to have been on the premises for a lawful purpose).

The State argues that the evidence only shows that the Waldrops were gathering abandoned property, which, the State asserts, is not unlawful. But the jury would have been authorized to disbelieve Weldon's hearsay statements to the effect that he was looking for scrap metal and that he thought the building was about to be demolished, as well as the statement by Weldon that the two men were just looking around. Instead, the jury could interpret the exclamation "shit" to indicate the men had intent to do something unlawful, such as loitering or prowling. "A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." OCGA § 16-11-36 (a). There is some evidence of loitering when the defendant offers an inadequate explanation of his presence in a place and at a time not usual for law-abiding individuals. See *Franklin v. State*, 258 Ga. App. 281 (574 SE2d 361) (2002). Thus the jury could have concluded that the two men were guilty of criminal trespass.

The error is not harmless. There was evidence that the home had been burglarized previously and there was very little evidence linking the damage in the house to the Waldrops. Compare *Stephens*

*v. State*, 232 Ga. App. 738, 740 (4) (503 SE2d 643) (1998) (overwhelming evidence of burglary where defendant was found on the property and he admitted taking items from the school); *Edwards*, 264 Ga. at 132 (evidence overwhelming where defendant admitted he was guilty of burglary).

4. Weldon contends the trial court erred by failing to instruct the jury that each accused must be treated separately and the evidence for each accused viewed separately. But Weldon's trial counsel testified that he decided not to request the charge because of trial strategy. On retrial, the parties and the court will have another opportunity to determine whether the facts merit such a charge. See generally *Lanzo v. State*, 187 Ga. App. 616, 618-619 (4) (371 SE2d 119) (1988) (distinct charge necessary that the conviction of one defendant did not require the conviction of the other). As stated by the Supreme Court,

> when trying co-defendants, it is the "better practice" for a trial court to give a separate instruction which details the jury's duty to consider each charge in the indictment against each defendant separately and which reminds the jury that the guilt of one defendant does not require the return of a guilty verdict against the other defendant. The trial courts of this state are encouraged to follow this "better practice" when presiding over a trial involving multiple defendants since not every charge containing plural references to the "defendants," even when considered as a whole, will authorize a finding of no reversible error.

*Nicholson v. State*, 265 Ga. 711, 714 (3) (462 SE2d 144) (1995).

5. Joshua contends the trial court erred by admitting evidence of Weldon's past transactions with Blaze Recycling Company. The trial court held that the evidence was relevant to show motive. Although the evidence might show legitimate transactions, as it only shows that Weldon was engaged in selling scrap metal, it might also show a motive to steal scrap metal in an effort to make a profit. We find no error. See generally *Davis v. State*, 240 Ga. App. 301 (522 SE2d 729) (1999) (State authorized to introduce evidence of motive even if it puts defendant's character in issue).

*Judgments reversed and cases remanded for new trial. Blackburn, P. J., and Doyle, J., concur.*

DECIDED OCTOBER 2, 2009 — 

*James K. Luttrell*, for appellant (case no. A09A1069).
*Brian Steel*, for appellant (case no. A09A1159).

*Garry T. Moss, District Attorney, Sara A. Thompson, William M. Clark, Assistant District Attorneys*, for appellee.