**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 15, 2014**

# In the Court of Appeals of Georgia

A14A1079. ST. LOUIS v. THE STATE.

BARNES, Presiding Judge.

A jury found Richard Roy St. Louis guilty of the misdemeanor offense of loitering or prowling. On appeal from the denial of his motion for a new trial, St. Louis challenges the sufficiency of the evidence. For the reasons discussed below, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and [St. Louis] no longer enjoys the presumption of innocence. We neither weigh the evidence nor assess the credibility of witnesses, but merely ascertain that the evidence is sufficient to prove each element of the crime beyond a reasonable doubt. Moreover, conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.

(Citation omitted.) *Rollins v. State*, 318 Ga. App. 311 (733 SE2d 841) (2012).

Viewed in the light most favorable to the jury's verdict, the evidence showed that the female victim lived alone in an apartment in Douglas County. Around 6:45 a.m. on March 13, 2012, the victim was returning to her apartment after spending the night away from home. The victim had her dog with her and was walking up a cement walkway that led to her apartment door. The outdoor light near her apartment was not working and it was still dark outside. As the victim approached her apartment door, St. Louis suddenly jumped out of the darkness toward her dog. According to the victim, St. Louis appeared startled, was standing in a "low" stance, and "looked like he was not right." The victim began to scream, and St. Louis apologized. Although the victim's dog was on a leash, St. Louis tried to explain his conduct by telling the victim that he "thought it was a stray dog." St. Louis then fled into the nearby woods. The victim at that point noticed that the latch to the screen door of her apartment was no longer fastened and that the door was slightly propped open against the door frame, even though she always latched the screen door before leaving home.

Frightened by the encounter, the victim went inside her apartment and called her boyfriend and then the police. The victim was close enough to St. Louis during their encounter to "see what his face looked like in the dark" and was able to provide a description of his appearance.

Around 6:55 a.m., a patrol officer saw St. Louis, who met the description provided by the victim, walking down a street near the apartment complex. The officer stopped St. Louis, explained why he was stopping him, and asked for his name and identification, which St. Louis provided. The officer asked St. Louis where he was coming from and where he was going, and St. Louis told the officer that he lived at the apartment complex, that he had just walked from his apartment to a convenience store to buy some cigarettes, and that he was in the process of returning to his apartment.

When the officer asked St. Louis if he had encountered anyone that morning after leaving his apartment, St. Louis initially denied having contact with anyone. However, when the officer later repeated the same question, St. Louis admitted that he had encountered a lady and her dog at the apartment complex that morning, that he thought he had startled her because she began to scream, and that he ran away when she screamed at him. Later, when the officer searched St. Louis, he discovered a flashlight and thick wool gloves in his coat pocket. According to the officer, it was around 70 degrees outside that morning. The officer asked St. Louis about the flashlight and wool gloves, but St. Louis gave no explanation for why he had them.

Another patrol officer had been dispatched to the victim's apartment. When the officer arrived at the apartment, the victim was holding her dog and was shaking and crying. After the officer calmed the victim down, the officer drove her to where St. Louis had been detained. When the victim saw St. Louis, she became distraught again, started to cry, and told the officer that St. Louis was the man she had encountered. St. Louis then was arrested for loitering or prowling outside the victim's apartment. Following the arrest, the victim learned that St. Louis lived in the same apartment complex, and she subsequently moved out of her apartment out of fear for her safety.

At the ensuing jury trial, the victim and responding officers testified to the events as set out above. After the State's case-in-chief, St. Louis elected to testify, denied unlatching the screen door to the victim's apartment, and claimed that he had been walking from his apartment to a convenience store along a dirt path that ran through the complex when he encountered the victim. In contrast, the victim testified that she encountered St. Louis on the concrete walkway outside her apartment door, not on the dirt path. The victim also testified that the quickest route to reach the dirt path from where St. Louis' apartment was located did not involve crossing over the cement walkway that led to her apartment door.

St. Louis further testified that his cat had suddenly darted out in front of him as he walked down the dirt path, and that he had then been startled by what he had thought was a stray dog chasing his cat. St. Louis testified that he then saw the victim, who began to scream, and that he apologized to her and continued walking down the path to the store. In contrast, the victim testified that she never saw a cat, that her dog did not look like a stray and had been on a leash only about "three strides ahead" of her, and that St. Louis had fled into the woods after their encounter.

Lastly, St. Louis claimed that he had the flashlight with him because he worked at a nearby restaurant and sometimes walked home in the dark and had the gloves in case it was cold outside. But St. Louis had not provided that explanation when he spoke with the police on the morning of the incident.

After hearing the conflicting evidence, the jury found St. Louis guilty of the charged offense. St. Louis filed a motion for new trial, which the trial court denied, resulting in this appeal.

"A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." OCGA § 16-11-36 (a). Here, the evidence and

5

all inferences drawn from it, when construed in favor of the prosecution, would support a finding by the jury that St. Louis was outside the victim's apartment door at 6:45 a.m., in the dark, with items in his pocket that could be used for a burglary; had unlatched and propped open the screen door; was startled upon unexpectedly encountering the victim and her dog; and then fled from the scene into the woods when the victim screamed. Under these circumstances, the jury was authorized to find that St. Louis was at the victim's door "at a time [and] in a manner not usual for law-abiding individuals" and that his actions would "warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity."

St. Louis argues, however, that the circumstantial evidence did not rule out the reasonable hypothesis that he was simply walking to the convenience store to buy cigarettes when he was startled by the victim and her dog. It is true that "[t]o warrant a conviction on circumstantial evidence, the proven facts must exclude every other reasonable hypothesis except the guilt of the accused." *Nangreave v. State*, 318 Ga. App. 437, 439 (1) (734 SE2d 203) (2012). See former OCGA § 24-4-6.[1] But the

_____

[1] Because this case was tried in December 2012, the new Georgia Evidence Code does not apply. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial

reasonable hypothesis rule applies only when all of the evidence against the defendant was circumstantial, see *Meeks v. State*, 281 Ga. App. 334, 337 (636 SE2d 77) (2006), and the victim's eyewitness testimony about her encounter with St. Louis served as direct evidence supporting his conviction.

In any event, even if the reasonable hypothesis rule were to apply in this case, it would not serve as an impediment to St. Louis' conviction. Under the rule,

> the circumstantial evidence need not exclude every *conceivable* inference or hypothesis – only those that are reasonable. Moreover, whether a hypothesis is reasonable and whether every other hypothesis except the guilt of the accused has been excluded are generally questions for the jury to decide. Because jurors are able to hear and observe the witnesses, and thus are better able to judge the reasonableness of a hypothesis raised by the evidence, this Court will not disturb their findings unless it is unsupportable as a matter of law.

(Citations and punctuation omitted; emphasis in original.) *Wise v. State*, 325 Ga. App. 377, 381 (2) (752 SE2d 628) (2013).

Contrary to St. Louis' argument, the jury could find that the evidence, as previously discussed, excluded every other reasonable hypothesis except his guilt. The jury, as the factfinder, was entitled to credit the testimony of the victim over the

commenced on or after such date.").

7

testimony of St. Louis regarding their encounter and draw the reasonable inference that St. Louis had unlatched the victim's apartment screen door. See *Nangreave*, 318 Ga. App. at 438 (3) ("The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts."). Additionally, St. Louis testified at trial that he thought the victim's dog was chasing his cat, but he never mentioned a cat in his conversation with the patrol officer, and, in fact, initially denied that he had any contact with anyone on the morning in question. St. Louis' conflicting statements further authorized the jury to find that every other reasonable hypothesis had been excluded. See *Viers v. State*, 303 Ga. App. 387, 391 (1) (693 SE2d 526) (2010). Finally, the jury could find that St. Louis' flight from the victim reflected his consciousness of guilt and was inconsistent with a reasonable hypothesis of innocence. See *Brooks v. State*, 324 Ga. App. 352, 354 (1) (750 SE2d 423) (2013) (noting that "flight is circumstantial evidence of consciousness of guilt, and the weight to be given to such evidence is for jury to decide"). Accordingly, St. Louis' reasonable hypothesis argument is unpersuasive.

St. Louis also argues that his conviction cannot stand because he fully complied with OCGA § 16-11-36 (b), which provides:

8

> Among the circumstances which may be considered in determining
> whether alarm is warranted is the fact that the person takes flight upon
> the appearance of a law enforcement officer, refuses to identify himself,
> or manifestly endeavors to conceal himself or any object. Unless flight
> by the person or other circumstances make it impracticable, a law
> enforcement officer shall, prior to any arrest for an offense under this
> Code section, afford the person an opportunity to dispel any alarm or
> immediate concern which would otherwise be warranted by requesting
> the person to identify himself and explain his presence and conduct. No
> person shall be convicted of an offense under this Code section if the
> law enforcement officer failed to comply with the foregoing procedure
> or if it appears at trial that the explanation given by the person was true
> and would have dispelled the alarm or immediate concern.

According to St. Louis, he fully complied with the statute because when approached by the patrol officer, he identified himself, did not flee from the officer, and truthfully told the officer that he had encountered the victim while walking that morning and had inadvertently startled her. Again, we are unpersuaded.

"The fact that [St. Louis] did not attempt to flee from the officer, did not refuse to identify himself, or did not attempt to conceal himself from the officer standing alone, does not mean that the evidence was insufficient to support a finding of prowling or loitering." (Citation and punctuation omitted.) *In the Interest of I. M. W.*, 313 Ga. App. 624, 627 (1) (b) (722 SE2d 586) (2012). Furthermore, the officer gave

St. Louis an opportunity to explain his presence and conduct, thus complying with the requirements of the statute. See *Franklin v. State*, 258 Ga. App. 281, 282 (574 SE2d 361) (2002). And in light of the victim's description of what had occurred, the jury was entitled to find that St. Louis' "explanation justifiably did not dispel the [officer's] concerns" and that St. Louis had not been truthful with the officer. Id. Consequently, the requirements imposed by OCGA § 16-11-36 (b) were not a bar to St. Louis' conviction in this case.

For these combined reasons, we conclude that a rational jury was entitled to find St. Louis guilty beyond a reasonable doubt of loitering or prowling under OCGA § 16-11-36 (a) and (b). *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See, e.g., *In the Interest of I. M. W.*, 313 Ga. App. at 626 (1) (a), 627 (1) (b) (evidence supported finding of prowling or loitering where defendant who was wearing a mask "stood at the door to a stranger's house and frightened the occupants by standing motionless and silent as to [his] intentions"; jury was entitled to reject defense that "there was a mistake"); *Hubbard v. State*, 311 Ga. App. 671, 673 (1) (716 SE2d 777) (2011) (evidence supported conviction for loitering based on defendant's "presence for many hours on the steps of an apartment complex where he did not live, apparent intoxication, and harassment of two women returning to the

10

complex at four in the morning");*McFarren v. State*, 210 Ga. App. 889, 890-891 (1) (437 SE2d 869) (1993) (evidence supported conviction for loitering or prowling where defendant "was seen peering into the windows of neighborhood homes" after dark; jury was entitled to reject defendant's explanation for his presence). The trial court therefore committed no error in denying St. Louis' motion for a new trial.

*Judgment affirmed. Boggs and Branch, JJ., concur.*