**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**April 14, 2015**

# In the Court of Appeals of Georgia

A15A0224. EL-FATIN v. THE STATE.                          JE-009C

ELLINGTON, Presiding Judge.

A DeKalb County jury found Mosi El-Fatin guilty beyond a reasonable doubt of carrying a concealed weapon in violation of OCGA § 16-11-126 (b);[1] and loitering or prowling, OCGA § 16-11-36 (a). Following the denial of his motion for a new trial, El-Fatin appeals, contending that the evidence was insufficient to authorize his conviction for loitering or prowling. For the following reasons, we affirm.

---

[1] OCGA § 16-11-126 (b) ("Any person who is not prohibited by law from possessing a handgun or long gun may have or carry on his or her person a long gun without a valid weapons carry license, provided that if the long gun is loaded, it shall only be carried in an open and fully exposed manner.").

The record shows that the State charged El-Fatin under OCGA § 16-11-36[2] with committing the offense of loitering or prowling on October 14, 2008, based on his presence "in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm and immediate concern for the safety of persons or property in the vicinity" in that he "was standing behind a condominium complex holding a sword." El-Fatin contends that the evidence established that he freely identified himself and otherwise cooperated with the officer who found him standing with a sword at that time and place, and that the explanation he gave to explain his presence and conduct was true and dispelled any alarm or immediate concern for the safety of persons or property in the vicinity. He contends that the statute prohibits conviction under such circumstances, citing OCGA § 16-11-36 (b). That Code section provides:

---

[2]    A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

OCGA § 16-11-36 (a).

Among the circumstances which may be considered in determining whether alarm is warranted [as provided in OCGA § 16-11-36 (a)] is the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the person or other circumstances make it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this Code section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct. *No person shall be convicted of an offense under this Code section if the law enforcement officer failed to comply with the foregoing procedure or if it appears at trial that the explanation given by the person was true and would have dispelled the alarm or immediate concern.*

(Emphasis added.) El-Fatin contends that the statute prohibits conviction under the circumstances established by the evidence.

Viewed in the light most favorable to the verdict,[3] the evidence showed the following. At approximately 5:30 a.m. on October 14, 2008, an officer responded to a dispatch that a suspicious male was in the rear of the Fairington Village condominium complex and was possibly armed. When the officer arrived, she found El-Fatin standing in the dark near a breeze way at the rear of the complex, holding a long sword in front of himself and waving it. The officer drew her service weapon and commanded El-Fatin to drop his weapon. After another officer arrived to assist, El-Fatin dropped the sword. The second officer patted El-Fatin for weapons; he had a second long sword in a sheath, a handgun in a holster, and a large knife, all concealed beneath his long, heavy wool coat. According to the first officer, the

---

[3]    On appeal from a criminal conviction, the appellate court view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

4

morning was not cold enough to require a coat or jacket. El-Fatin was also wearing a bullet-proof vest and a hat, underneath which he had a ski mask.

The first officer asked El-Fatin what he was doing behind the apartment building. He told her that he was playing with his sword and that he had just left his girlfriend "Happy," who lived in Building II on the third floor. When the officers went there to confirm this statement, the residents of that unit and other nearby units denied that anyone called "Happy" lived in the building. El-Fatin then offered a different explanation for his presence, saying that he had been living in the complex, but had recently moved out and was living in his truck, which he had parked in the complex parking lot.

El-Fatin volunteered the information that he did not have a permit for the handgun, and the officers arrested him for carrying a concealed weapon. El-Fatin asked them to check on his dog, which he said was in his truck. When the officers checked the vehicle he indicated, the officers found no dog, although two people were sleeping in the vehicle. The officers also saw in plain view another sword and ammunition of various calibers. Some people gathered around to see what was happening, but, according to the first officer, none talked to her about El-Fatin. According to the second officer, a man identified himself as a relative of El-Fatin and

5

offered to move his vehicle. Another man told that officer that he had previously seen El-Fatin around the complex.

At trial, El-Fatin testified that he had been living at the complex with his aunt and other relatives until a week or two before his arrest, but then had to resort to sleeping in his truck because the apartment was overcrowded. He testified that, on the morning he was arrested, he was using his swords to prevent anyone from stealing his dog and his furniture from his truck. He testified that, when he encountered the police officers, he had been waiting for his friend Happy to return home so he could go inside. He testified that, when the officer asked him what he was doing, he answered, "nothing," that he was just "observing" his sword, and he immediately informed her that he had a handgun. He told her that he was an officer of the Moorish Science Temple of America, which he said is based on love, truth, peace, freedom, and justice, and that he was committing no wrong. He described how he cooperated with the officers in removing his coat and bulletproof vest and disarming himself. According to El-Fatin, several people spoke up for him and told the officers that he was not doing anything wrong.

Under OCGA § 16-11-36, it was for the finder of fact to determine whether El-Fatin's presence at the condominium complex was at a time or in a manner not usual

for law-abiding individuals under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. Given the evidence that El-Fatin was standing outside a residential building before dawn, wearing a bulletproof vest and armed with a handgun, a large knife, and two long swords, one of which was drawn, the jury was authorized to find that his manner and the circumstances justified an objectively reasonable immediate concern for the safety of persons or property in the vicinity. *St. Louis v. State*, 328 Ga. App. 837, 841 (763 SE2d 126) (2014) (Conviction of loitering or prowling was authorized where there was evidence that the defendant was outside of the victim's apartment in the dark with items that could be used for a burglary; he had unlatched and opened a screen door; he fled into woods after he encountered the victim and her dog and the victim screamed; and at first he falsely told a law enforcement officer that he had not encountered anyone. *Hubbard v. State*, 311 Ga. App. 671, 672-673 (1) (716 SE2d 777) (2011) (Conviction of loitering or prowling was authorized where there was evidence that the defendant was present for many hours on the steps of an apartment complex where he did not live; he was behaving in an intoxicated manner; and he harassed two women returning to the complex at 4:00 a.m.). The fact that El-Fatin did not refuse to identify himself and did not attempt to flee from the officers, standing

7

alone, does not mean that the evidence was insufficient to support conviction. *St. Louis v. State*, 328 Ga. App. at 841; *In the Interest of I. M. W.*, 313 Ga. App. at 627 (1) (b).

It was also for the jury to decide whether the explanation that El-Fatin gave the officers for his presence and conduct was true and, if true, whether it dispelled the immediate public safety concern. Given the evidence that El-Fatin claimed he was waiting for a friend called "Happy," who was a resident, and that he had recently lived in a unit there, and that, when the officers tried to confirm that information, they received no confirmation, the jury was authorized to find that his explanation for his presence and conduct was not true or, if true, that it was not sufficient, in light of all of the circumstances, to dispel the officers' concern that he was a threat to persons and property in the area. *St. Louis v. State*, 328 Ga. App. at 841 (Conviction of loitering or prowling was authorized where the suspect's explanation to a law enforcement officer failed to account for his possession of a flashlight and thick wool gloves on a warm day.); *In the Interest of I. M. W.*, 313 Ga. App. 624, 627 (1) (b) (722 SE2d 586) (2012) (Conviction of loitering or prowling was authorized where the suspect's explanation to a law enforcement officer could be read as an admission that he intended to frighten the victims.); *McFarren v. State*, 210 Ga. App. 889, 890-891

8

(1) (437 SE2d 869) (1993) (Conviction of loitering or prowling was authorized where the suspect's explanation to a law enforcement officer conflicted with the facts determined by the officer.). The trial court did not err in denying El-Fatin's motion for a new trial.

*Judgment affirmed. Dillard and McFadden, JJ., concur.*