**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 4, 2022**

# In the Court of Appeals of Georgia

A21A1602. BOWLES v. THE STATE.

MILLER, Presiding Judge.

Chad Drew Bowles seeks review after a Cobb County jury found him guilty of first-degree burglary and loitering or prowling. On appeal, Bowles argues that the evidence was insufficient to convict him of loitering or prowling and that his trial counsel provided ineffective assistance when she failed to object to various hearsay statements by the State's witnesses. Upon a close review of the record and the relevant law, we affirm Bowles' convictions and sentence.

Viewed in the light most favorable to the jury's verdicts,[1] the record shows that Pamela and Thomas Reis resided on Merrifield Lane in Marietta, Georgia. One afternoon in June 2015, Ms. Reis heard voices coming from outside of her house, and

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

when she went to investigate, she saw Bowles and another man standing near her open garage door in her driveway and a gold car parked in the road in front of their house. Ms. Reis asked the men why they were on her property, and they showed her several nametags that they claimed to have found. These nametags were previously located in the Reis' car, which was parked in their garage. Bowles returned the nametags to Ms. Reis, and asked Ms. Reis if she could drive them somewhere. Ms. Reis refused and asked the men to leave the property. After the two men left, Ms. Reis relayed the incident to her husband. Mr. Reis checked their vehicle, found an unknown key stuck in the ignition, and noticed that a pair of sunglasses was missing.

Mr. Reis left his house and saw the gold car parked a couple doors down at the residence of Sue Sanford. Sanford was not at home at the time, and no one was authorized to be on her property. Mr. Reis observed the two men walk around the property before backing out in the car. Bowles then drove into the Reis' driveway and offered Mr. Reis candy. Mr. Reis refused and asked the men to leave immediately.

Claudia Floyd, who also resides on Merrifield Lane, saw the gold car in the Reis' driveway. The car then pulled up to Floyd's house, and one of the men in the car asked her for assistance with their vehicle "around the corner." Floyd declined,

2

and the men slowly drove off. Floyd felt uneasy about the men, and she warned her children to stay inside.

Bret Booher, another resident of Merrifield Lane, received an alert from a neighbor that someone was in his garage trying to steal his car. Booher checked his garage and saw that his car door was open and that the car battery cable had been disconnected. Floyd reported that she saw the gold car parked in Booher's driveway.

Floyd and Mr. Reis reported the incident and the gold car's license plate number to law enforcement. Law enforcement located the vehicle and initiated a traffic stop. The reporting officer identified Bowles as the driver and asked him about what he and the other man had been doing in the area. Bowles reported that they were trying to locate a set of keys that was inside one of the houses in the subdivision. The reporting officer did not believe Bowles' answer because Bowles could not identify a specific house and because he found the answer to be "wild [and] ambiguous."

A grand jury indicted Bowles on two counts of first-degree burglary of the Reis and Booher residences (OCGA § 16-7-1 (b)), three counts of loitering or prowling on the Sanford and Floyd residences and a third residence on another street (OCGA § 16-11-36), and one count of driving with a suspended license (OCGA § 40-5-121 (a)). At trial, the jury found Bowles guilty of the burglary counts and the two loitering

3

and prowling counts for the Sanford and Floyd residences.[2] The trial court imposed a total sentence of 20 years, with 4 to be served in prison and the remainder to be served on probation. Bowles filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Bowles first argues that the evidence was insufficient to sustain his two convictions for loitering or prowling. Specifically, he argues that the evidence was not sufficient to establish that his actions were unusual or would cause alarm because the evidence only established that he and the other man turned around in the Sanfords' driveway and then had a brief conversation with Floyd in the street. Upon consideration of the entire record, we disagree.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

---

[2] The trial court entered a directed verdict of acquittal on the remaining loitering count, and the State nolle prossed the suspended license count.

(Citation omitted.) *Anderson v. State*, 338 Ga. App. 802 (792 SE2d 92) (2016).

"A person commits the offense of loitering or prowling when he is in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." OCGA § 16-11-36 (a).

> Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the person or other circumstances make it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this Code section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Code section if the law enforcement officer failed to comply with the foregoing procedure or if it appears at trial that the explanation given by the person was true and would have dispelled the alarm or immediate concern.

OCGA § 16-11-36 (b). Generally, "it [is] for the finder of fact to determine whether [the defendant's] presence . . . was at a time or in a manner not usual for law-abiding individuals under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." *El-Fatin v.*

5

*State*, 332 Ga. App. 252, 254 (771 SE2d 902) (2015). "It [is] also for the jury to decide whether the explanation that [the defendant] gave the officers for his presence and conduct was true and, if true, whether it dispelled the immediate public safety concern." Id. at 255. Furthermore, the list of possible circumstances to be considered in determining whether alarm is warranted, as contained in OCGA § 16-11-36 (b), "is not exclusive or exhaustive." *In the Interest of R. F.*, 279 Ga. App. 708, 711 (2) (a) (632 SE2d 452) (2006).

We conclude that the State presented sufficient evidence to support Bowles' convictions for loitering at the Sanford and Floyd residences. As for the Sanford residence, the State presented evidence that Mr. Reis observed Bowles' vehicle parked at Sanford's house at a time when Sanford was not at home and when no one was authorized to be at her residence. Bowles also pulled up to Floyd's residence and asked her to leave with him. These acts occurred just after the Reises discovered Bowles on their property committing a burglary, and it also occurred just before Bowles was seen on Booher's property committing a burglary. Floyd also testified that she found the acts suspicious enough that she warned her children to remain inside, and she felt the need to track Bowles and to contact law enforcement after contacting the Reises, who knew of the prior burglary. A reasonable jury could

6

conclude from this record that Bowles' actions on the Sanford and Floyd properties were not entirely harmless activities but were instead actions which would create a justifiable and reasonable alarm for the safety of property in the vicinity. See *Milanovich v. State*, 278 Ga. App. 669, 670 (1) (629 SE2d 556) (2006) (evidence was sufficient to support loitering and prowling conviction where the defendant cut into a fence and entered onto private property that had previously been subject to a break-in at a time that the property was not open to the public, and a witness was sufficiently alarmed to contact law enforcement); see also *St. Louis v. State*, 328 Ga. App. 837, 841 (763 SE2d 126) (2014) (evidence was sufficient to support loitering and prowling conviction when the defendant was discovered outside of the victim's apartment in the dark with items that could be used for a burglary, and he had unlatched and opened a screen door).

Citing OCGA § 16-11-36 (b), Bowles argues that his actions were not suspicious because he did not attempt to flee from the homeowners or law enforcement and because he complied with every request by the homeowners to leave. However, "[t]he fact that [Bowles] did not attempt to [flee], did not refuse to identify himself, or did not attempt to conceal himself from [law enforcement] standing alone, does not mean that the evidence was insufficient to support a finding

of prowling or loitering." (Citation omitted.) *St. Louis*, supra, 328 Ga. App. at 842. Pursuant to the loitering statute, law enforcement provided Bowles with an opportunity to explain his presence in the vicinity, and "[i]t was [for] the jury to decide whether the explanation that [Bowles] gave the officers for his presence and conduct was true and, if true, whether it dispelled the immediate public safety concern." *El-Fatin*, supra, 332 Ga. App. at 255. In this case, the jury was free to reject Bowles' explanation about his actions given that no evidence at trial confirmed his story that he was attempting to locate lost keys. See id. (jury was authorized to find that defendant's explanation of his presence at a condominium complex wielding a sword was not true when law enforcement received no confirmation for his story that he was waiting for a resident friend at the complex).

We therefore conclude that the evidence at trial was sufficient to support Bowles' convictions for loitering or prowling.

2. Bowles also argues that his trial counsel provided ineffective assistance when she failed to object to hearsay testimony from the reporting officer regarding statements which the various homeowners made as part of his investigation. We conclude that Bowles has not shown that his trial counsel provided ineffective assistance.

To prevail on a Sixth Amendment claim of ineffective assistance, [Bowles] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. To prove deficient performance, [Bowles] must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. And to prove prejudice, [Bowles] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden is a heavy one.

(Citations and punctuation omitted.) *Koonce v. State*, 305 Ga. 671, 672 (2) (827 SE2d 633) (2019). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. Matters of trial tactics . . . are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it." (Citation omitted.) *Campbell v. State*, 337 Ga. App. 7, 12 (2) (785 SE2d 649) (2016).

At the hearing on the motion for new trial, Bowles' trial counsel testified that she anticipated that Bowles would testify at trial, and so she purposefully did not object to the reporting officer's testimony so that she could highlight the differences among what the homeowners testified to at trial, their statements to the officer, and

9

Bowles' account of his actions. She explained that she intended to show that the homeowners were not credible and that "[i]t was one of the few avenues" available for a defense. Ultimately, however, after the State presented its case, Bowles decided not to testify in his defense. During closing argument, trial counsel nevertheless urged the jury to examine the inconsistencies between the homeowners' testimony and the account they gave to law enforcement. Trial counsel's failure to object to these hearsay statements was therefore part of a conscious, over-arching trial strategy to impeach the credibility of the State's witnesses. "A decision to refrain from objecting to testimony in favor of impeaching a witness or showing inconsistencies in the evidence is a trial strategy and, if reasonable, will not support an ineffectiveness claim." *Koonce*, supra, 305 Ga. at 673 (2) (b). On this record, we cannot conclude that trial counsel's strategy was unreasonable, and therefore Bowles has not shown that his trial counsel was ineffective in this respect.

Accordingly, we affirm Bowles' convictions and sentence and the denial of his motion for new trial.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*